## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CHAD HAYSE,**

      Plaintiff,

vs.

                                Case No:  17-cv-
                                Hon.

**CITY OF MELVINDALE,** *a political Subdivision of the State*; **MELVINDALE CITY COUNCIL,** *a legislative body of the City of Melvindale*; **NICOLE BARNES, WHEELER MARSEE, MICHELLE SAID LAND, DAVE CYBULSKI, CARL LOUVET,** *and* **STEVEN DENSMORE,** *individuals, sued in their official and personal capacities,*

      Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
**Irina L. Vaynerman (0396759)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Chad Hayse, by his attorneys Deborah Gordon Law, complains

against Defendants City of Melvindale, Melvindale City Council, Nicole Barnes,

Wheeler Marsee, Michelle Said Land, Dave Cybulski, Carl Louvet, and Steven Densmore as follows:

## Jurisdiction and Parties

1.     This is an action by Plaintiff Chad Hayse against Defendants City of Melvindale, Melvindale City Council, Nicole Barnes, Wheeler Marsee, Michelle Said Land, Dave Cybulski, Carl Louvet, and Steven Densmore for depriving Plaintiff of his rights under the United States Constitution.

2.     This Court has federal subject matter jurisdiction pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331.

3.     Plaintiff Chad Hayse ("Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

4.     Defendant City of Melvindale ("City") is a political subdivision of the State of Michigan.

5.     Defendant Melvindale City Council ("City Council") is the legislative body of the City of Melvindale.

6.     Defendant Nicole Barnes ("Defendant Barnes") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

7.     Defendant Wheeler Marsee ("Defendant Marsee") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

8.     Defendant Michelle Said Land ("Defendant Land") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

9.     Defendant Dave Cybulski ("Defendant Cybulski") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

10.     Defendant Carl Louvet ("Defendant Louvet") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

11.     Defendant Steven Densmore ("Defendant Densmore") is an individual who at all pertinent times served on the Melvindale City Council and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

12.     Defendants City, City Council, Barnes, Marsee, Land, Cybulski, Louvet, and Densmore will collectively be referred to herein as "Defendants" unless more specifically referenced.

13.     The events giving rise to this matter occurred in the Eastern District of Michigan, and as a result venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391.

### Background Facts

14.     Plaintiff worked within the Melvindale Police Department for twenty-five years.

15.     Plaintiff began his employment with Defendants on or about December 10, 1991 as a patrolman, and over the years rose through the ranks until he was appointed Police Chief in June of 2012.

16.     Plaintiff's performance has at all times been satisfactory or better.  He was highly trained and experienced, and received commendations from both his superiors and members of the public for his service on the police force.

17.     Goch and Sons Towing had a contract with the City to fulfill the City's towing needs.

18.     Throughout 2016, the City Council, the Public Safety Commission, the City Administrator, and the president of Goch and Sons Towing often

4

discussed the number of vehicles towed by the City, and expressed concern about the decreasing number of vehicles towed.

19.    Officer Furman was responsible for a vast majority of the total number of cars towed by the City.

20.    Officer Furman had been investigated for violations of police procedure and rules and regulations related to the number of civil infraction tickets he was writing and the large amount of vehicles that he was causing to be towed while on duty.

21.    In or about June 2016, Plaintiff became aware that Officer Furman had allegedly assaulted a prisoner. Officer Furman was thereafter placed on suspension for three days.

22.    In the final year of Plaintiff's employment with the City, Office Furman engaged in repeated incidents of police brutality. In fact, Officer Furman was ultimately suspended again at the beginning of July 2016.

23.    On or about July 12, 2016, at a Public Safety Commission meeting, the president of Goch and Sons Towing reported that towing numbers were down for the City.

24.    At or sometime around the July 20, 2016 City Council meeting, Plaintiff provided statistical information about the number of tows and tickets in Melvindale.

5

25.    The City Council advised Plaintiff that they had hired someone to investigate the decrease in tickets and impounds.

26.    The City Council questioned Plaintiff about why the City had not issued more tickets and towed more vehicles. Upon information and belief, the City desired to reach a quota for the number of tickets and tows executed in Melvindale.

27.    Further, upon information and belief, the president of Goch and Sons Towing is friends with the Mayor and the City Administrator. These individuals went to high school together, and the president of the towing company takes the Mayor and City Administrator to sports events.

28.    On or about July 28, 2016, on the basis of additional information about the assault Furman had been disciplined for, Plaintiff altered Furman's suspension from "with pay" to "without pay," and advised City officials as such.

29.    On or about August 2, 2016, Plaintiff was again questioned about tickets and tows at a City Council meeting.

30.    Upon information and belief, the City of Melvindale was, at the time, on its final year of a 5-year debt elimination plan.

31.    Plaintiff believed the City was attempting to illegally use increased ticket and towing revenue to meet the expectations set by that debt elimination plan.  In fact, Plaintiff's suspicions were confirmed when the Mayor stated during

6

a City Council meeting that the City's deficit would continue if towing numbers were not increased.

32.    On or about August 3, 2016, Goch and Sons Towing produced a report to the City Council about towing statistics for the month of July, which again were lower than usual.

33.    Plaintiff was then suspended on August 3, 2016 on a false and pretextual basis.

34.    At a City Council meeting on August 17, 2016, upon information and belief, the Council received a report about the City's tickets and tows, and voted to suspend Plaintiff an additional 20 days.

35.    On or about August 19, 2016, Plaintiff was served with a list of bogus charges against him, which included accusing him of providing false statements to the Public Safety Commission regarding the installation of the 911 dispatch system; willful misconduct regarding the usage of towing services; willful misconduct for improper issuance of discipline against Officer Furman; willful misconduct for use of slanderous statements toward public officials; and making an improper post on Facebook.

36.    On August 29 and 30, 2016, the City held a hearing regarding Plaintiff's employment. The City paraded in a number of witnesses, while only allowing Plaintiff to call three of his own.

7

37.     Although Plaintiff denied each of the claims against him and had reasonable explanations for each of the charges alleged, he was removed from his position as Police Chief at the conclusion of the hearing on August 30, 2016.

38.     Plaintiff was removed from his position despite the fact that, per Chapter 13, Section A of the Melvindale Charter, appointed officials can only be removed from their position for:

      a.  Conviction by a court of competent jurisdiction of any offense under this charter or any criminal ordinance of the City or any law of this State or the United States.
      b.  Willful violation of any of the provisions of this Charter.
      c.  Habitual intoxication or drunkenness.
      d.  Incompetency to perform the duties of his or her office.
      e.  Willful neglect of duty.
      f.  Corrupt or willful malfeasance, misfeasance or nonfeasance in office.
      g.  Willful misconduct to the injury of the public service.

39.     If anything, Plaintiff was attempting to uphold the charter, preempt the corrupt malfeasance of others, ensure he was performing his duties fully, and prevent the injury of the public service.

40.     The Mayor, City Council, and others disfavored Plaintiff's attempts to hold Officer Furman accountable for his actions because if Furman was held accountable they would not benefit from the increased revenue Furman brought in with his incredibly high numbers of tickets and tows.  Accordingly, Defendants hatched a plan to get rid of Plaintiff so that they, and Goch and Sons Towing, could bring in the heightened revenue once more.

8

41.     In doing so, they held sham "proceedings," having already pre-determined that Plaintiff was going to be removed from his position as Police Chief, to make it appear as if Plaintiff was receiving the due process required to terminate his employment with the City.

42.     Because these "proceedings" were a sham, Plaintiff did not receive the due process to which he was entitled before having an adverse employment action taken against him.

### COUNT I
### *42 USC § 1983 - Fourteenth Amendment Due Process*
### *Procedural Due Process*
### *Property and Liberty Interests*

43.     Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

44.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

45.     Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the State absent due process.

46.     Plaintiff has a protected liberty interest in pursuing his employment as an appointed public official who can only be removed for cause, as well as future

9

employment opportunities and occupational liberty, which the State cannot deprive him of absent due process.

47.     Plaintiff has a protected property interest in his employment, which the State cannot deprive him of absent due process.

48.     Plaintiff had a constitutionally protected property interest in continuing his employment with the City of Melvindale.

49.     Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing.

50.     Plaintiff had a significant interest in avoiding negative and permanent designations on his employment record, as well as the negative press surrounding the hearings and tarnishing his good name.

51.     Plaintiff was entitled to fundamentally fair procedures to determine whether violations of the City Charter occurred.

52.     Regardless, Defendants removed Plaintiff from his position as Police Chief, depriving him of his liberty and property interests, without affording him basic due process rights.

53.     Defendants denied Plaintiff the opportunity to be heard in any meaningful way, as the sham proceedings served as a mere pretense for Defendants' pre-determined decision to terminate Plaintiff.

54.    At his "hearing," Plaintiff was precluded from questioning a number of witnesses who would have testified on his behalf and exonerated him, while the Defendant City called a number of witnesses to testify against Plaintiff.

55.    Plaintiff was denied a meaningful opportunity to clear his name.

56.    Plaintiff's liberty and property interests were invaded by Defendants in an arbitrary and irrational manner.

57.    Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence.

58.    Defendants agreed to, approved, and ratified this unconstitutional conduct.

59.    It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

60.    Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

61.    There exists no rational relationship between Plaintiff's actual conduct and the discipline imposed against him by Defendants.

62.    In depriving Plaintiff of his constitutionally protected rights, including his liberty interest in his good name, reputation, honor, integrity, opportunity to pursue employment, and his property interest in his employment, Defendants

11

violated Plaintiff's right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

63.    Defendants, by their agents, representatives, and employees acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

64.    The acts of Defendants and their agents, representatives, and employees represent official policy of the City of Melvindale and are attributable to the City of Melvindale.

65.    At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

66.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to denial of employment opportunities; negative publicity surrounding his removal from office restricting, if not destroying, future employment opportunities; false, permanent findings on Plaintiff's record for misconduct which did not occur; damage to Plaintiff's standing and associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against

Defendants as follows:

### A.    LEGAL RELIEF

1.    Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.    A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3.    Exemplary damages in whatever amount Plaintiff is found to be entitled;

4.    Punitive damages in whatever amount Plaintiff is found to be entitled; and

5.    An award of interest, costs and reasonable attorney fees.

### B.    DECLARATORY & EQUITABLE RELIEF

1.    An order from this Court requiring the City of Melvindale to remove discipline related to the claims in this case from Plaintiff's record, and issuing him a Retirement ID and badge to reflect that he has retired from his employment;

2.    An injunction from this Court prohibiting any further acts of discrimination or retaliation;

3.    An award of interest, costs, and reasonable attorney fees; and

4.    Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

Dated:  October 6, 2017

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Irina L. Vaynerman (0396759)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com

## JURY DEMAND

Plaintiff**,** by his attorneys **Deborah Gordon Law,** demands a trial by jury of all the issues in this cause.

Dated:  October 6, 2017

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Irina L. Vaynerman (0396759)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com