# EXHIBIT A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PATRICK EASTON,

    Plaintiff,

vs.

CITY OF MELVINDALE, and
JOHN ALLEN,

    Defendants.
_____/

Case No. 2017-    -CD
Hon.

17-013285-CD
FILED IN MY OFFICE
WAYNE COUNTY CLERK
9/5/2017 8:08:26 AM
CATHY M. GARRETT

JAY A. SCHWARTZ (P45268)
MARY A. MAHONEY (P41568)
Attorneys for Plaintiff
Schwartz Law Firm, P.C.
37887 West Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-9400
_____/

THERE IS NO OTHER CIVIL ACTION BETWEEN THESE PARTIES ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT PENDING IN THIS COURT, NOR HAS ANY SUCH ACTION BEEN PREVIOUSLY FILED AND DISMISSED OR TRANSFERRED TO AFTER HAVING BEEN ASSIGNED TO A JUDGE.

## COMPLAINT

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, PATRICK EASTON, by and through his attorneys, Schwartz Law Firm, P.C., and for his Complaint, states as follows:

1. Plaintiff, PATRICK EASTON ("Easton") is an individual, currently residing in the Township of Brownstown, County of Wayne, State of Michigan; Easton is a police officer employed by the Defendant, City of Melvindale.

2. Defendant, City of Melvindale, is a municipal corporation organized by Charter and governed by an elected Mayor and City Council.

1

3. Defendant, JOHN ALLEN, is an individual and the current Chief of the Melvindale Police Department; at all relevant times, ALLEN was an "agent" of Defendant City of Melvindale within the meaning of MCL 15.361(b).

4. The acts, omissions and events set forth in this Complaint occurred within the City of Melvindale, County of Wayne, State of Michigan; jurisdiction and venue are proper with this Court.

5. The amount in controversy is in excess of $25,000.00.

## COMMON ALLEGATIONS

6. Plaintiff EASTON began his employment with Defendant City of Melvindale on June 14, 1996, as a police officer; as of the date of the events set forth herein, Plaintiff had achieved the rank of sergeant.

7. Beginning in 2014, Plaintiff made the prior police chief, Chad Hayse and the current police chief, Defendant John Allen, aware of numerous health and safety violations within the police department premises; despite repeated and courteous notifications to the department chiefs, none of the health and safety issues were remedied, placing Plaintiff, other police officers, and the public at large who visited the police station at risk for injury and harm.

8. Because the health and safety issues were not remedied, Plaintiff was compelled to file a complaint with MIOSHA.

9. MIOSHA initiated an investigation of Plaintiff's formal complaint, which resulted in citations and fines to Defendant City of Melvindale. Defendant ALLEN paid the fines quietly out of City taxpayer funds, without approval from the Public Safety Commission and/or the City Council.

10. Shortly after Defendant City of Melvindale was cited and fined for health and safety violations, Defendant ALLEN called Plaintiff into a meeting and advised Plaintiff that he was aware that Plaintiff had filed the MIOSHA complaint; Plaintiff did not deny this fact, and confirmed that he had filed the complaint. Defendant ALLEN became enraged and told Plaintiff that he would be disciplined and ultimately terminated as a result of the MIOSHA complaint.

11. On June 22, 2017, Defendant ALLEN again called Plaintiff into a meeting and advised him that he was instituting progressive discipline due to the MIOSHA complaint and Plaintiff's failure to "volunteer" for an annual running event and another community program, Shop with a Cop. Defendant ALLEN issued discipline to Plaintiff for petty and spurious infractions for which others had not been disciplined; and deducted vacation benefit days from Plaintiff's bank of benefit days; ALLEN specifically stated that he intended to terminate Plaintiff for filing the MIOSHA complaint.

12. On July 11, 2017, Plaintiff went to the City Public Safety Commission and requested to meet with the Commission in a closed session; during this session, he informed the Safety Commissioners of the retaliation and ongoing harassment that was directed at him by Defendant ALLEN.

13. On July 19, 2017, Defendant ALLEN and the Chairman of the Public Safety Commission issued a directive making it a violation for any police officer to report misconduct or communicate with the Public Safety Commission, the City Council or the Mayor without the express authority of Defendant ALLEN.

14. On July 25, 2017, Defendant ALLEN ordered Plaintiff to participate in a disciplinary hearing in Defendant ALLEN's office because of his July 19 conduct in speaking to the Public Safety Commission.

15. On July 25, 2017, Plaintiff contacted his personal psychologist, who specializes in police psychology, and advised him of stress and anxiety-related symptoms that were the direct result of the ongoing harassment and retaliation against him by Defendant ALLEN; Plaintiff's psychologist advised Plaintiff that he should not return to work, as he was not currently fit for duty as a result of the cumulative negative effects of the harassment and retaliation.

16. Plaintiff has remained off work since July 25, 2017, and Defendant ALLEN is requiring Plaintiff to exhaust sick days for each day that he is unable to work; Plaintiff is required to call in sick prior to every scheduled shift, and despite a long-standing practice of allowing officers to exchange shifts, Plaintiff is not permitted to request other officers to work shifts in reimbursement for time already worked by Plaintiff for other officers.

17. Plaintiff was ordered to attend psychological evaluations with psychologists retained by Defendant City and the City's workers compensation carrier; the City's psychologist has also indicated that Plaintiff is not currently fit for duty. Plaintiff has requested copies of the reports of the two psychologists retained by the City and its workers compensation insurance carrier, but the City has not yet provided copies, despite the City's reliance on these documents to determine his duty status and benefit entitlement. ALLEN has also required Plaintiff to attend a two-day fitness for duty examination without compensation, contrary to contractual requirements.

18. Defendant ALLEN has disclosed personal and protected medical information about Plaintiff's condition and the reasons for his leave to subordinate officers and city politicians who have no reason to know or inquire into such matters.

19. As a direct and proximate of the wrongful and unlawful retaliation by Defendant City of Melvindale and its agent, Defendant ALLEN, Plaintiff remains unable to return to work and is without compensation and other benefits of his employment.

## COUNT I – VIOLATION OF WHISTLEBLOWERS PROTECTION ACT

20. Plaintiff realleges and incorporates by reference his allegations contained in paragraphs 1 through 19, as though fully restated below.

21. At all relevant times, Plaintiff was an employee, and Defendants were his employers, covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 et seq.

22. Defendants violated the Whistleblowers' Protection Act when they discriminated against Plaintiff as described regarding the terms, benefits, conditions, and privileges of his employment because he reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan and opposed practices made illegal by the laws, regulations, or rules of the State of Michigan.

23. The actions of Defendants were intentional.

24. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress for which he has sought treatment from a therapist and a psychologist; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

WHEREFORE, PLAINTIFF REQUESTS that this court enter judgment against Defendants as follows:

1. Legal relief

   a. compensatory damages in whatever amount he is found to be entitled;

   b. exemplary damages in whatever amount he is found to be entitled;

   c. judgment for lost wages, past and future, in whatever amount he is found to be entitled;

   d. an award for the value of lost fringe and pension benefits, past and future; and

   e. an award of interest, costs, and reasonable attorney fees.

2. Equitable relief

   a. an order reinstating Plaintiff to the position he would have held had there been no discrimination or retaliation;

   b. an injunction prohibiting any further acts of retaliation or discrimination;

   c. an award of interest, costs, and reasonable attorney fees; and

   d. whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,

SCHWARTZ LAW FIRM, P.C.

By: /s/ Mary A. Mahoney
Mary A. Mahoney (P41568)
Attorney for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
mmahoney@schwartzlawfirmpc.com

Dated: September 1, 2017

## PLAINTIFF'S JURY DEMAND

NOW COMES Plaintiff, PATRICK EASTON, by and through his attorney, SCHWARTZ LAW FIRM, P.C., and hereby demands a trial by jury of the within cause.

Respectfully submitted,

SCHWARTZ LAW FIRM, P.C.

By: /s/ Mary A. Mahoney
Mary A. Mahoney (P41568)
Attorney for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
mmahoney@schwartzlawfirmpc.com

Dated: September 1, 2017