UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CHAD HAYSE,**

       Plaintiff,

vs.

**CITY OF MELVINDALE,** *a political Subdivision of the State*; **MELVINDALE CITY COUNCIL,** *a legislative body of the City of Melvindale*; **NICOLE BARNES, WHEELER MARSEE, MICHELLE SAID LAND, DAVE CYBULSKI, CARL LOUVET,** *and* **STEVEN DENSMORE,** *individuals, sued in their official and personal capacities,*

       Defendants.

Case No:  17-cv-13294
Hon.  Linda V. Parker
Mag. Elizabeth A. Stafford

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Irina L. Vaynerman (0396759)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**FOLEY & MANSFIELD, PLLP**
Gregory M. Meihn (P38939)
Melinda Balian (P55744)
John S. Gilliam (P81421)
Attorneys for Defendants
130 E. Nine Mile Road
Ferndale, Michigan 48220
(248) 721-8183/Fax (248) 721-4201
gmeihn@foleymansfield.com
mbalian@foleymansfield.com
jgilliam@foleymansfield.com
Lawrence J. Coogan (P42433)
Co-Counsel for Defendants
4146 Oakwood Blvd.
Melvindale, Michigan 48122
(313) 381-0044
lawrencejcooganlaw@yahoo.com

_____

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Chad Hayse, by and through his attorneys, Deborah Gordon Law, files this Motion for Summary Judgment, and moves this Honorable Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in his favor with respect to his claim of First Amendment Retaliation.

Plaintiff also submits his Brief in support of this Motion, along with exhibits and deposition testimony, which are filed herewith.

Pursuant to Local Rule 7.1, Plaintiff sought, but did not receive Defendants' concurrence in the relief sought.

Respectfully submitted this 15th day of October, 2018.

Dated: October 15, 2018

**DEBORAH GORDON LAW**
/s/ Elizabeth Marzotto Taylor (P82061)
Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CHAD HAYSE,**

      Plaintiff,

vs.

Case No: 17-cv-13294
Hon. Linda V. Parker
Mag. Elizabeth A. Stafford

**CITY OF MELVINDALE,** *a political Subdivision of the State*; **MELVINDALE CITY COUNCIL,** *a legislative body of the City of Melvindale*; **NICOLE BARNES, WHEELER MARSEE, MICHELLE SAID LAND, DAVE CYBULSKI, CARL LOUVET,** *and* **STEVEN DENSMORE,** *individuals, sued in their official and personal capacities,*

      Defendants.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Irina L. Vaynerman (0396759)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**FOLEY & MANSFIELD, PLLP**
Gregory M. Meihn (P38939)
Melinda Balian (P55744)
John S. Gilliam (P81421)
Attorneys for Defendants
130 E. Nine Mile Road
Ferndale, Michigan 48220
(248) 721-8183/Fax (248) 721-4201
gmeihn@foleymansfield.com
mbalian@foleymansfield.com
jgilliam@foleymansfield.com
Lawrence J. Coogan (P42433)
Co-Counsel for Defendants
4146 Oakwood Blvd.
Melvindale, Michigan 48122
(313) 381-0044
lawrencejcooganlaw@yahoo.com

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

I.      INTRODUCTION..........................................................................................1

II.     PLAINTIFF'S STATEMENT OF MATERIAL FACTS ..............................3

The City of Melvindale Considers a Controversial Central Police Dispatch System...............3

Plaintiff's June 8, 2016 Facebook Comment ........................................................5

Plaintiff's June 8, 2016 Comment Did Not Merit Discipline .......................................6

Defendants Propose to Terminate Plaintiff for his June 8, 2016 Facebook Post.......................8

Plaintiff is Terminated, In Part, for Making the June 8, 2016 Post............................10

III.    LAW AND ARGUMENT.................................................................................11

        A.      Standard of Review.........................................................................11

        B.      Plaintiff was Retaliated Against for Exercising his First Amendment
                Right to Free Speech........................................................................12

                1.      Plaintiff's June 8, 2016 Facebook Post was Protected Speech..............13

                        a.      Plaintiff's Post was on a Matter of Public Concern...................14

                        b.      It is Uncontested that Plaintiff spoke as a Private Citizen..........17

                        c.      Plaintiff's Comment had No Impact on the City or
                                Police Department..........................................................19

                2.      Plaintiff's Termination as an Adverse Action...........................20

                3.      Evidence of Causations is Undisputed – Plaintiff's Termination
                        was Based, in Part, on his June 8, 2016 Facebook Comment ..............21

                4.      Decisions by Defendants Create Liability for the City..........................24

i

IV.   CONCLUSION.................................................................................................25

CERTIFICATE OF SERVICE.....................................................................................26

# INDEX OF AUTHORITIES

**Cases**                                                                          **Page**

*Anderson v. Antal,*
   191 F.3d 451 (6th Cir. 1999) ..................................................................12

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1968) .................................................................................11

*Bart v. Telford,*
   677 F.2d 622 (7th Cir.1982) ....................................................................20

*Bender v. Hecht's Dep't. Stores,*
   455 F.3d 612 (6th Cir. 2006) ..................................................................11

*Biggs v. Village of Dupo*,
   892 F.2d 1298 (7th Cir. 1990) ..................................................................2

*Bryson v. Regis Corp.*,
   498 F.3d 561(6th Cir.2007) .....................................................................21

*Cameron v. Grainger County*,
   274 Fed. Appx. 437 (6th Cir. 2008).........................................................24

*Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*,
   131 F.3d 564 (6th Cir. 1997) ...................................................................14

*Clark v. Walgreen Co.,*
   424 Fed. App'x. 467 (6th Cir. 2011) .......................................................12

*Conn v. Gabbert*,
   526 U.S. 286 (1999)..................................................................................12

*Connick v. Myers*,
   461 U.S. 138 (1983)............................................................................ 13, 14

*Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*,
   477 F.3d 807 (6th Cir.2007) ....................................................................20

*Ely v. Dearborn Heights Sch. Dist. No. 7,*
    150 F. Supp. 3d 842 (E.D. Mich. 2015) ......................................... 20, 22

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)........................................................................ 13, 17

*Haji v. Columbus City Schools,*
    2015 WL 4385280, at *4 (6th Cir. July 16, 2015)........................ 21, 23

*Handy-Clay v. City of Memphis, Tenn.,*
    695 F.3d 531(6th Cir. 2012) ......................................................... 13, 17

*Henderson v. City of Flint,*
    2017 WL 3412095, at *6 (E.D. Mich. Aug. 9, 2017)...........................13

*Hirsch v. CSX Transp. Inc.,*
    656 F.3d 359 (6th Cir. 2011) ...............................................................11

*Hoover v. Radabaugh,*
    307 F.3d 460 (6th Cir. 2002) ...............................................................21

*Hughes v. Region VII Area Agency on Aging,*
    542 F.3d 169 (6th Cir.2008) ................................................................22

*Jackson v. Leighton,*
    168 F.3d 903 (6th Cir. 1999) ...............................................................16

*Jett v. Dallas Independent School Dist.,*
    491 U.S. 701 (1989)..............................................................................25

*King v. Zamiara,*
    680 F.3d 686 (6th Cir.2012) ................................................................22

*Larry v. Powerski,*
    148 F. Supp. 3d 584 (E.D. Mich. 2015) ......................................... 21, 22

*Mayhew v. Town of Smyrna, Tennessee,*
    856 F.3d 456 (6th Cir. 2017) ..................................................... 13, 17, 18

*McMurphy v. City of Flushing,*
    802 F.2d 191(6th Cir.1986) .................................................................16

*Miller v. City of Canton*,
   319 F. App'x 411 (6th Cir.2009) ...............................................................22


*Monell v. Dep't Social Servs.*,
   436 U.S. 658 (1978)...............................................................................24


*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)...............................................................................25


*Pickering v. Board of Educ. of Township High Sch. Dist. 205*,
   391 U.S. 563 (1968)......................................................................... 14, 19


*Rankin v. McPherson*,
   483 U.S. 378 (1987)......................................................................... 19, 20


*Rodgers v. Banks*,
   344 F.3d 587 (6th Cir.2003) ....................................................................22


*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) ............................................................. 20, 21

**Statutes**
42 U.S.C. § 1983.................................................................................. 12, 24

**Other Authorities**
Fed. R. Civ. P. 56(c).................................................................................11

## I.     INTRODUCTION

Plaintiff seeks summary judgment on his claim of First Amendment Retaliation.  Dkt. # 68 at 14-17. Although it is somewhat unusual for a plaintiff to seek summary judgment in an employment discrimination case, Plaintiff's claim of First Amendment retaliation is a suitable candidate for such relief. The material facts of this claim are uncontested, and the governing law is well-defined. Defendants have testified and provided documentary evidence showing that they terminated Plaintiff, in pertinent part, because he, as a private citizen, commented on a matter of public concern which was at the time hotly debated in Melvindale's public discourse.

During Plaintiff's tenure as police chief, he sought to rein in the rogue behavior of a police officer, Matthew Furman, who nearly single-handedly brought in hundreds of thousands of dollars to the City each year via his towing activity. **Ex. N**, Amended Complaint for Plaintiff's Removal at 11. This revenue was particularly significant to the City of Melvindale in 2015 and 2016, as the City was unsuccessfully executing a deficit elimination plan supervised by the State of Michigan's. **Ex. G**, Barnes Dep. 16:23-7:15.

In 2015 and 2016, Plaintiff attempted to address Furman's behavioral deficiencies—including the selective enforcement of the traffic code, and violent acts of physical abuse against prisoners and suspects. Plaintiff eventually

1

suspended him in connection with allegations of excessive force. **Ex. F,** Hayse Dep. at 87:12-17; 91:24-92:18. Defendants disfavored Plaintiff's attempts to discipline Furman because they benefited from the revenue accumulated from Furman's thousands of tickets and tows. They needed to quickly terminate Plaintiff so that they could resume bringing in heightened revenue. Accordingly, Defendants falsely accused Plaintiff of various acts of wrongdoing. As will be fully briefed in Plaintiff's forthcoming response to Defendants' Motion for Summary Judgment, Defendants later testified that none of their allegations against Plaintiff were factually accurate, or constituted terminable offenses.

Although it is widely held that "freedom of speech is not traded for an officer's badge," *Biggs v. Village of Dupo*, 892 F.2d 1298, 1303 (7th Cir. 1990) in this case, Defendants explicitly terminated Plaintiff for engaging in speech they recognize as being protected by the First Amendment. **Ex. G,** Barnes Dep. at 139:11-140:7; 143:4-7. Defendants' actions toward Plaintiff are reprehensible not only because they constitute a blatant violation of his First Amendment rights, but also because of their significant after-effects. Openly terminating a public employee for weighing in as a concerned citizen on a matter of public discourse undoubtedly communicates to the rest of the workforce that they must forgo their right to free speech to remain employed. This in turn deprives the public discourse of the opportunity to benefit from the well-informed opinions of public employees

on matters of public concern, which has an obviously and impermissibly deleterious impact on the entire democratic process. Plaintiff's motion should be granted.

## II.    PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### The City of Melvindale Considers a Controversial Central Police Dispatch System

Chapter 20, Section 5 of the Melvindale City Charter establishes the Melvindale Public Safety Commission ("PSC"). **Ex. A,** Melvindale City Charter at 33. The Charter specifically separates the police department from the political branches of Melvindale's government by stipulating that the PSC should be comprised of volunteers from the community who may not hold public office. *Id.; see also* **Ex. B,** Bolton Dep. 6:10-13; 133:25. The Charter provides that the PSC "shall possess and exercise fully all the powers and perform all the duties pertaining to the government, management, maintenance, and direction of the Police and Fire Departments of the City, and all the premises and property thereof, including all appointments to such forces." **Ex. A,** Melvindale City Charter at 33.

Chapter 20, Section 6 states that the PSC "shall appoint an individual as Chief of the Police Department and define the terms and conditions of such appointment." **Ex. A,** Melvindale City Charter at 34. The Charter specifies that, when filling the position of Chief, the PSC should select the highest qualified individual from those officers who are most senior amongst the ranks. *Id.* If the

3

PSC deems that none of the department's highest ranked officers qualify to serve as Chief, it may fill the position from outside the department via a competitive application and selection process. *Id.*  The Charter identifies the qualifications for the position as 15 years of service as a police officer, and "the ability to perform as chief and meet the qualifications established by the Commission of Public Safety." *Id.* Political affiliation is explicitly not a qualification for the position of Police Chief.

In July 2012, Plaintiff was appointed Police Chief, after 21 years as a patrol officer. In approximately March 2014, City officials, including Defendants began considering the possibility of consolidating Melvindale's police dispatch function with those of other local municipalities'. **Ex. C,** Central Dispatch Correspondence. In 2016, the Mayor, along with several Defendants, renewed their efforts to move forward with central dispatch. *Id.;* **Ex. D,** Bazman Dep. 62:1-5. The proponents of moving to a "central dispatch" system touted it as a cost saving measure. However, the many vocal detractors of this plan were not convinced it could achieve cost savings in the long run, and believed it would result in a loss of service quality. **Ex. E,** Aug. 3, 2016 City Council Meeting at 8:6-12:25; 53:24-54:6; 58:4-61:1; 68:11-70:20; 79:3-83:14; 90:6-94:16; 95:9-101:24; 105:13-110:23; 112:14-20; 113:7-20; 114:8-116:9 and Related Correspondence.

## Plaintiff's June 8, 2016 Facebook Comment

On June 8, 2016, Plaintiff used Facebook to engage in a conversation with fellow citizens using his personal Facebook account. It is uncontested that the June 8, 2016 conversation took place within a closed group[1] Plaintiff personally belonged to called, "Melvindale: It Takes a Village." **Ex. F,** Hayse Dep. at 69:25-70-5; **Ex. G,** Barnes Dep. at 137:1-140-8; **Ex. H**, Coogan Dep. at 382:9-18; 383:6-21. **Ex. I,** Relevant Facebook Posts at 11. Multiple citizens were discussing the pros and cons of central dispatch within the closed group. *Id.* One citizen commented that it seemed to him that the Melvindale Police Department would "get the shaft" if the City moved to a central dispatch system. *Id.* Plaintiff responded by clarifying that his major concern was that "the one getting the shaft may be the taxpayers" if central dispatch came to pass—meaning that as an informed and concerned citizen, he did not believe the change would create a cost savings, or that Melvindale's citizens would receive the same level of service quality under consolidated dispatch. *Id.*



---

[1] Membership in a closed Facebook group may only be granted by the group's moderators upon request.

### Plaintiff's June 8, 2016 Comment Did Not Merit Discipline

It is undisputed that the Defendant City had no social media use policy at the time Plaintiff made the June 8, 2016 post. **Ex. J,** John Allen Dep. 250:7-12. Additionally, Defendant City Council members have admitted under oath that Plaintiff's assertion of his opinion on central dispatch was not a terminable offense, or even one that merited discipline within the meaning of the Police Department's or City's policies and rules.

Defendant City Councilman Cybulski testified that Plaintiff was permitted to "discuss anything," including his belief that central dispatch would not benefit the City. In fact, Cybulski testified that Plaintiff was permitted to disagree with other officials about the purported benefits of central dispatch, and express these opinions freely without being terminated. **Ex. K,** Cybulski Dep 51:10-18; 53:5-22. Similarly, Councilwoman Said Land testified that when Plaintiff spoke as a private individual, rather than in his official capacity, he had no obligation to avoid political or religious discussion. **Ex. L,** Said Land Dep. 29: 4-18; 91:9-92:13. Likewise, Councilman Densmore testified that the City had no authority to stop Plaintiff from posting his personal opinion on his private social media. **Ex O**, Densmore Dep. at 120:23-121:2.

According to Councilman Louvet, as long as Plaintiff did not post his personal opinions on the City's social media accounts, the City would have no

authority to discipline him for expressing those opinions. **Ex. P,** Louvet Dep. at

13:16-14:9; 101:12-15; 101:24-102:2. Even Lawrence Coogan, the City's attorney

admitted that City employees, including police officers are allowed to post

personal opinions on private social media pages. **Ex. H,** Coogan Dep. at 383:23-

384:1. Notably, Defendant Nicole Barnes, Melvindale's City Council President,

and the co-author of the written charges which called for Plaintiff's termination,

admitted her belief that Plaintiff was within his First Amendment rights to make

this post—affirming that it was not an action that merited discipline. **Ex. G,** Barnes

Dep. at 139:11-140:7; 143:4-7. Barnes testified that members of the police

department, including Plaintiff, are permitted to post their opinions about the topic

of central dispatch publically. *Id.* at 138:2-9.

Additionally, other members of the police department, including Matthew

Furman and Patrick Easton also posted on the closed "Melvindale: It Takes a

Village" Facebook group, without consequence. **Ex.** I, Relevant Facebook Posts at

9, 18-19.




Despite having been notified of Furman's and Easton's posts as well, Defendants

neither noticed nor cared if they made social media posts about their concerns

about central dispatch from their private Facebook accounts on the same closed

group. **Ex P,** Louvet Dep. at 100:16-101:2; **Ex. K**, Cybulski Dep. at 54:22-55:16; **Ex. O**, Densmore Dep. at 119:9-13. The City's lax attitude towards public discourse on social media is further demonstrated by the fact that Mayor Stacy Bazman also joined in the same conversation Plaintiff contributed to earlier, in order to voice her support of central dispatch.



**Ex.** I, Relevant Facebook Posts at 12, 20-5. Defendants clearly singled Plaintiff out for termination without any legitimate, lawful basis.

### Defendants Propose to Terminate Plaintiff for his June 8, 2016 Facebook Post

Barnes testified that in late July 2016, she and the other City Council members "unanimously" agreed to terminate Plaintiff's employment, in part, because of his June 8, 2016 Facebook post. **Ex. G,** Barnes Dep., 129:3-131:24. Thereafter, Defendants drafted a complaint dated August 3, 2016 proposing Plaintiff's termination. *Id.* at 131:20-132:7; **Ex. M**, August 3, 2016 Complaint for Plaintiff's Removal. The August 3, 2016 Complaint specifically proposed that Defendants terminate Plaintiff because of the June 8, 2016 Facebook post *Id.* Subsequently, Defendants drafted an amended complaint, dated August 17, 2016 which also explicitly proposed that Plaintiff be terminated, in part, for making the

June 8, 2016 Facebook post. **Ex. N**, Amended Complaint for Plaintiff's Removal at 2-3.

Notably, the Amended Complaint against Plaintiff seems calculated to make it appear as if Plaintiff posted his June 8, 2016 Facebook post on the official Melvindale Police Department page, when this is obviously and undisputedly not the case.





In fact, Barnes admitted under oath that the Amended Complaint improperly characterizes Plaintiff's June 8, 2016 post as one made on the official Melvindale Police Department Facebook page. **Ex. G,** Barnes Dep. at 132:20-133:11. The Defendant Council members testified that at the time they decided to fire Plaintiff

for making his June 8, 2016 comment, they did not know where Plaintiff had posted it. **Ex. K,** Cybulski Dep 50:12-22; 54:14-21; **Ex. L,** Said Land Dep. 101:2-12; 102:1-103:10; **Ex. G,** Barnes Dep. at 93:25-95:15; 137:1-9; **Ex. O,** Densmore Dep. at 120:3-11; **Ex. P,** Louvet Dep. at 98:5-24. Despite having been provided with Plaintiff's post in its entirety weeks earlier, and having the ability to visit the post to ascertain its nature, Defendants never bothered to investigate further. **Ex. I,** Relevant Facebook Posts at 1; **Ex. K**, Cybulski Dep. at 49:19-50:4; **Ex. O**, Densmore Dep. at 113:23-114:3; **Ex. L**, Said Land Dep. at 105:10-16.   They proceeded to terminate Plaintiff for making a comment from his personal account on a closed group, about a matter of public importance and concern.

### Plaintiff is Terminated, In Part, for Making the June 8, 2016 Post

After pre-determining weeks earlier that Plaintiff was going to be removed from his position as Police Chief, the City held a two day-long sham "proceeding" regarding Plaintiff's employment on August 29 and 30, 2016. At the end of the hearing, the Defendants unanimously voted to terminate Plaintiff's employment with the City for the reasons stated in their August 17, 2016 Amended Complaint against Plaintiff. **Ex. Q,** August 29 and 30, 2016 City Council Meeting Minutes.

> **16-08-259** Moved by Barnes and supported by Louvet, to terminate Chad Hayse, Chief of Police, effective immediately, for willful neglect of duty, corrupt or willful malfeasance, misfeasance and non feasance in office, willful misconduct to the injury of the public service, the charges have been sustained such office shall be deemed to be vacated and in such case, the reason for such determination, beyond reasonable doubt.
>
> Passed Unanimously

Defendants also admitted under oath that they fired Plaintiff, in part, for his June 8, 2016 Facebook post. **Ex. G,** Barnes Dep. at 150:19-23; **Ex. P**, Louvet Dep. 93:17-23; -97:24-98:8; **Ex. O**, Densmore Dep. at 112:23-113:23.

## III.    LAW AND ARGUMENT

### A.    Standard of Review

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Bender v. Hecht's Dep't. Stores,* 455 F.3d 612, 619-20 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). The question for the Court is whether the evidence presents sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Hirsch v. CSX Transp. Inc.,* 656 F.3d 359, 362 (6th Cir. 2011). It is well-settled that the existence of a "mere scintilla of evidence" supporting a party's position will not suffice. Rather, in order to go before a jury, the dispute must be both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1968).

An issue of fact is "material," if under the applicable substantive law, it might impact the outcome of the case. Likewise, an issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-

moving party. *Id.; Anderson v. Antal,* 191 F.3d 451 (6th Cir. 1999); *Clark v. Walgreen Co.,* 424 Fed. App'x. 467, 471 (6th Cir. 2011).

### B. Plaintiff was Retaliated Against for Exercising his First Amendment Right to Free Speech

42 U.S.C. § 1983 creates a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To state a prime facie case under § 1983, a plaintiff must allege that (1) the action occurred "under color of law," and that (2) the action was a deprivation of a constitutional right or a federal statutory right. As set forth above, Plaintiff was terminated by official legislative action of the Melvindale City Council, in part, because he exercised his First Amendment right to free speech. **Ex. Q,** August 29 and 30, 2016 City Council Meeting Minutes; *supra* at 10. It is therefore undisputed that Defendants terminated Plaintiff under color of state law. It is also undisputed in this case that Defendants terminated Plaintiff, in part, because he stated that the move to central dispatch might negatively impact Melvindale's citizens. **Ex. N,** Amended Complaint for Plaintiff's Removal at 2-3.

In order to prove that Plaintiff was retaliated against for exercising his First Amendment rights, he must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action sufficient to deter person of ordinary firmness from engaging in such conduct; and (3) the adverse action he suffered

was motivated at least in part by Plaintiff's protected conduct. *Henderson v. City of Flint*, No. CV 16-11648, 2017 WL 3412095, at *6 (E.D. Mich. Aug. 9, 2017).

### 1.    Plaintiff's June 8, 2016 Facebook Post was Protected Speech

Whether a citizen engages in protected speech is a matter of law. *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 462 (6th Cir. 2017). When the citizen concerned is a public employee, the First Amendment protects his right to speak as a citizen on matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006). Public employees cannot invoke the First Amendment to protect speech made as an employee on matters of personal interest. *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983). This standard is meant to protect the public's strong interest in receiving the well-informed views of government employees engaged in civic discussion. *Garcetti*, 547 U.S. at 419.

There is a three-part test to determine whether a public employee engaged in protected speech. First, the speech involved must be on a matter of public concern. Second, the speech must be made as a private citizen, rather than pursuant to the person's official duties. Third, the individual's interest as a citizen in speaking on the matter must outweigh the state's interest as an employer in promoting efficiency of public services it performs through its employees. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012); *Mayhew,* 856 F.3d at 462.

### a.   Plaintiff's Post was on a Matter of Public Concern

It is well-settled that matters of public concern are those that may be "fairly characterize[d] ... as relating to any matter of political, social, or other *concern to the community.*" *Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 574 (6th Cir. 1997) (internal quotation marks omitted). The First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information. *See Connick,* 461 U.S. at 145, 149, 103; *Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 571–72 (1968). "The core value of the Free Speech Clause of the First Amendment" is "[t]he public interest in having free and unhindered debate on matters of public importance." *Pickering,* 391 U.S. at 573. This core value demands that "[public employees] be able to speak out freely on ... questions [of public concern] without fear of retaliat[ion]." *Id.* at 572. *Chappel*, 131 F.3d at 574.

The record of this case provides ample evidence that the question of whether Melvindale would move to a consolidated police dispatch system was of great public interest in Melvindale at the time Plaintiff made the June 8, 2016 post. Due to the large public interest in the matter, the City Council discussed it at multiple public meetings, including those on June 1 and August 3, 2016. **Ex. E,** Aug. 3, 2016 City Council Meeting at 8:6-12:25; 53:24-54:6; 58:4-61:1; 68:11-70:20; 79:3-83:14; 90:6-94:16; 95:9-101:24; 105:13-110:23; 112:14-20; 113:7-20; 114:8-

14

116:9 and Related Correspondence. On August 3, 2016, numerous private citizens raised questions and concerns about the prospect of a central police dispatch system. *Id.* Similarly, concerned citizens raised questions about the efficacy of a consolidated dispatch system before the Council on June 1, 2016. **Ex. R,** June 1, 2016 City Council Meeting at 14-15; 25-34; 54:11-61:25.

There is also evidence that the City Council dedicated at least one "Workshop Meeting" to the topic of central dispatch, to allow for the vigorous public debate on the topic to continue. **Ex. I,** Relevant Facebook Posts. The City Council voted on the issue on June 15, 2015, and the resolution failed by a narrow margin. **Ex. S,** June 15, 2016 City Council Meeting Minutes at 4**.** The debate indeed continued, however, and on July 20, 2016, the City Council authorized its attorney to investigate legal issues involved in centralized dispatch. **Ex. T,** July 20, 2016 City Council Meeting Minutes at 11:13-15:11. The pros and cons of moving to a central dispatch system were of great political concern in the Melvindale community in 2016.

Plaintiff's June 8, 2016 Facebook comment was on this matter of public concern. Immediately preceding Plaintiff's comment, a citizen stated his belief that the Melvindale Police Department would "get the shaft" if the City moved to a central dispatch system. Plaintiff clarified his intent was to speak as a concerned citizen about (1) the level of service the citizens would receive under a central

15

dispatch system, and (2) various city officials' untruthfulness as to whether central dispatch alone will save the city money. **Ex. N,** Amended Complaint for Plaintiff's Removal at 2-3; *supra* at 5, 9.

Plaintiff was not speaking about internal office politics, but rather addressed the potential impacts of pending legislation on the citizens of Melvindale, which were hotly contested matters of public discourse at the time. In this way, Plaintiff's comment is analogous to the speech at issue in *Thomas v. Whalen*, 51 F.3d 1285, 1290 (6th Cir. 1995), where the Court held that the debate over the propriety of pending legislation is obviously a matter of public concern.

Moreover, Plaintiff's comment relates to the merger of two municipalities' police dispatch systems, which threatened the existence of Melvindale's police dispatch system. It is clear from the aforementioned vigorous public debate on this issue that the continued existence of Melvindale's dispatch was important to the locality, because it provided public safety services to area residents. In *Jackson v. Leighton*, 168 F.3d 903, 910 (6th Cir. 1999), the Sixth Circuit considered that the quality, availability, and cost of health care services are among the most important and debated public issues. The very same can be said of public safety, particularly police and rescue, services. It is well-settled that the public is deeply concerned with how a police department is operated. *McMurphy v. City of Flushing,* 802 F.2d 191, 196 (6th Cir.1986). Under the foregoing analyses, Plaintiff's June 8, 2016

post was on a matter of public concern—namely, whether the citizens would receive high quality police dispatch services under central dispatch, and whether this change would actually save money or merely be an empty political gesture. *See also Solomon v. Royal Oak Twp.*, 842 F.2d 862, 866 (6th Cir. 1988) (noting the central importance of the public's interest in the integrity of those commissioned to enforce the law and the exposure of corrupt and wasteful government practices).

### b.    It is Uncontested that Plaintiff Spoke as a Private Citizen

The question of whether a statement was spoken as a public employee or as a private citizen for First Amendment purposes is "a practical one," which requires an inquiry into the employee's duties. *Garcetti,* 547 U.S. at 424-5; *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 462 (6th Cir. 2017). The "critical question" involved in determining whether an individual has engaged in protected speech as a private citizen is whether the speech at issue is itself ordinarily within the scope of the employee's duties, <u>not</u> whether it merely concerns those duties. *Mayhew,* 856 F.3d at 464. Speech is not transformed into employee—rather than citizen—speech merely because it concerns information acquired by virtue of the speaker's public employment. *Mayhew*, 856 F.3d at 463. Accordingly, the Court should take into account the context and content of the speech, the impetus for the speech, the setting and audience, general subject matter, where the speech occurred, and the subject matter of the individual's employment. *Handy-Clay*, 695

F.3d at 540; *Mayhew,* 856 F.3d at 464. Here, these factors incontrovertibly and undisputedly show that Plaintiff spoke as a private citizen, not in his official capacity as Chief of Police for the City of Melvindale.

As set forth above, Plaintiff posted the comment from his private, individual Facebook account within a closed Melvindale citizens' group that he belonged to as an individual. **Ex. F,** Hayse Dep. at 69:25-70-5; **Ex. G,** Barnes Dep. at 137:1-140-8; **Ex. H**, Coogan Dep. at 382:9-18; 383:6-21. **Ex. I,** Relevant Facebook Posts at 11. Plaintiff's comment was not made for the general public, but instead directly responds to an immediately preceding comment by another concerned citizen. Indeed, Plaintiff's comment never identified or implicated his position, duties, or employment in any way. In sum, the context of the comment shows that Plaintiff's intent was to draw attention to how central dispatch might have impacted the taxpayers in their daily lives, not its impact on the police department and his own every day duties.

Furthermore, the information Plaintiff used to make this statement was drawn from his attendance at public meetings, and from his own common sense and knowledge as a long-serving police officer. Plaintiff spoke as a well-informed private citizen, without invoking or otherwise implicating his authority or title, or making any reference to his daily duties or employment. Here, Plaintiff did not exploit his rank for the purpose of enhancing his credibility on the topic of central

dispatch—in fact, he did not reference his employment at all. *Thomas*, 51 F.3d at 1291. He was clearly and undisputedly speaking as a private citizen.

### c.   Plaintiff's Comment had No Impact on the City or Police Department

The interest Plaintiff had as a citizen in high quality public safety services and holding government officials accountable for the City's financial health outweighs the City's interest as an employer in curtailing this speech. *Rankin v. McPherson*, 483 U.S. 378, 388-91 (1987). There is no evidence whatsoever in this case that Plaintiff's June 8, 2016 comment had any impact on the police department's performance of its duties and operations, ability to execute its mission, or departmental morale[2] and efficiency.

Furthermore, Defendants could have no legitimate interest in curtailing Plaintiff's speech because his June 8, 2016 comment was not communicated to the public, but was directly in response to a dialogue between himself and another

---

[2] To the extent Defendants point to the testimony of Officers Furman and Easton to allege that Plaintiff created a hostile work environment within the department, there is no evidence that this alleged disharmony meaningfully interfered with the department's public operations—as would be required under the *Pickering* balancing standard. More importantly, there is no evidence that Plaintiff's June 8, 2016 comment caused this alleged hostile work environment, which is dispositive under the aforementioned legal standard. In fact, to the extent that the working environment in the police department did become difficult around the time of Plaintiff's termination, the undisputed evidence in this case shows that this was because of the City's attempts to hastily end Plaintiff's employment on the basis of false pretenses—not because of his commentary on central dispatch. **Ex. U**, Kennaley Dep. at 143:17-144:10; 169:12-14.

citizen. *Rankin*, 483 U.S. at 388-91. Additionally, Plaintiff's comment did not make use of the authority and public accountability of his role as a City employee—in fact, Plaintiff did not reference his employment at all. *Id.* Defendants had no legitimate interest in curtailing Plaintiff's speech—let alone one that outweighed Plaintiff's interest in speaking about his concern that the citizens of Melvindale receive high quality public safety services.

### 2.   Plaintiff's Termination was an Adverse Action

It is widely held that a plaintiff alleging First Amendment retaliation need not show they were actually deterred from exercising his right to free speech. *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007); *see also Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 853 (E.D. Mich. 2015), *aff'd,* 655 F. App'x 495 (6th Cir. 2016). An adverse employment action is one that would deter a person of ordinary firmness from exercising her speech rights.  "[S]ince there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] **need not be great in order to be actionable**."  *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982) (approved by the Sixth Circuit in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)) (emphasis added).  Requiring a showing of "adverse" action "is intended to weed out only **inconsequential** actions, and **is not** a means whereby solely

egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X,* 175 F.3d at 398.

Both the Sixth Circuit and this Court have held that a termination "undeniably" constitutes an adverse action for the purpose of establishing a First Amendment Retaliation claim. *Larry v. Powerski*, 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir.2007).

Defendants terminated Plaintiff from his employment with the City on August 30, 2016. **Ex. Q,** August 29 and 30, 2016 City Council Meeting Minutes. Under prevailing case law, Plaintiff's termination is a sufficiently adverse action, which, as a matter of law would deter a person of ordinary firmness from engaging in speech. *Haji v. Columbus City Schools*, No. 12–3520, 621 Fed.Appx. 309, 313, 2015 WL 4385280, at *4 (6th Cir. July 16, 2015) (where even a recommendation of termination was found to be sufficiently adverse under First Amendment Retaliation standard).

### 3.   Evidence of Causation is Undisputed—Plaintiff's Termination was Based, in Part, on his June 8, 2016 Facebook Comment

"An act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the action would have been proper if taken for a different reason." *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002). Therefore, the Court's role is to determine if protected speech was "a substantial or motivating

factor" in the adverse action; speech need not be the only factor. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir.2008) (quoting *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir.2003)) (emphasis added). "Put differently, a plaintiff satisfies the motivation element by showing that the adverse action 'was motivated <u>at least in part</u>' by the protected speech." *Miller v. City of Canton*, 319 F. App'x 411, 419 (6th Cir. 2009) (emphasis added).

In the First Amendment Retaliation context, the element of causation is a two part inquiry. First, the Court must determine whether the adverse action was proximately caused by Defendants, and second, whether Defendants were motivated by a desire to punish Plaintiff for the exercise of a constitutional right. *Paterek*, 801 F.3d at 646 (quoting *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir.2012)). "The true object of this inquiry is to determine whether the plaintiff has been retaliated against as a direct result of his or her protected speech." *Larry v. Powerski*, 148 F. Supp. 3d 584, 601 (E.D. Mich. 2015).

Defendants explicitly and undisputedly terminated Plaintiff, in pertinent part, because of his June 8, 2016 Facebook comment. Accordingly, this case is analogous to that of *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 853–54 (E.D. Mich. 2015), *aff'd*, 655 F. App'x 495 (6th Cir. 2016), where the Court found there was sufficient causation because both written reprimands issued to the plaintiff "plainly stated that they were issued *because of* the plaintiff's

speech." *Id.* (emphasis in original). The Court therefore held that these plain statements by the defendants were adequate evidence to show that the protected speech was the cause of the defendants' adverse action against the plaintiff. *Id.*

Likewise, in this case, both Defendants' August 3, 2016 and August 17, 2016 Complaints explicitly propose that Plaintiff be terminated, in part, because of his June 8, 2016 Facebook Comment. **Ex. M,** August 3, 2016 Complaint for Plaintiff's Removal; **Ex. N,** Amended Complaint for Plaintiff's Removal at 2-3. Under the analysis set forth in *Ely*, this evidence sufficiently proves causation between Plaintiff's protected speech and Defendants' termination of his employment.

Moreover, Defendants testified under oath that they decided to vote in favor of Plaintiff's termination because of his June 8, 2016 comment. **Ex. G,** Barnes Dep. at 150:19-23; **Ex. K**, Cybulski Dep. 118:21-119:1; **Ex. L**, Said Land Dep. 17:2-24; 100:5-101:1; **Ex. O,** Densmore Dep. at 112:23-114:2; **Ex. P**, Louvet Dep. at 90:91:16; 97:18-98:8; **Ex. X,** Marsee Dep. 111:2-7; 117:23-118:9. As set forth fully in Plaintiff's forthcoming Response to Defendants' Motion for Summary Judgment, Defendants had no other legitimate, non-retaliatory reasons to terminate his employment with the City. *See Haji*, 621 F. App'x at 315. All of Defendants' reasons for terminating Plaintiff were mere shams designed to end his employment in violation of his Constitutional rights. Defendants fired Plaintiff because of his

June 8, 2016 Facebook comment, in violation of his First Amendment right to free speech.

The combination of Defendants' written allegations, which explicitly list Plaintiff's June 8, 2016 comments as a reason for his termination, and Defendants' testimony, which reiterates the same, is direct, uncontested evidence of causation between Plaintiff's First Amendment protected speech and his termination. *Cameron v. Grainger County*, 274 Fed. Appx. 437 (6th Cir. 2008) (where "equivocation at deposition" by Sheriff about whether he "might" have treated plaintiff-employee differently if not for her protected First Amendment association/speech of opposing candidate was direct evidence of retaliation).

### 4. Decisions by Defendants Create Liability for the City

A governmental agency is liable under 42 U.S.C. § 1983 for the acts of its agents, if those acts represent the entity's official "policy or custom." *Monell v. Dep't Social Servs.*, 436 U.S. 658 (1978). A "policy or custom" may be made up of any "acts or edicts [that] may fairly be said to represent official policy." *Id.* at 694. The "custom and policy" requirement can be met in the context of a single and isolated decision by an individual policymaker:

> If the decision to adopt [a] particular course of action is properly made by that government's authorized decision makers, it surely represents an act of official government "policy" as that term is commonly understood.

24

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).   The acts of authorized decision makers for a public entity concerning the action alleged to have caused the particular constitutional violation at issue are attributable to the entity. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). Here, it is undisputed that the City's elected legislators, its City Council members, are the final decision-makers when it comes to matters of legislation and public policy. **Ex. A,** Melvindale City Charter at 16.

## IV.   CONCLUSION

Because no genuine disputed issues of material fact exist with regard to Plaintiff's claim of First Amendment retaliation, summary judgment is proper. Accordingly, for all the reasons set forth herein, Plaintiff requests that this Honorable Court grant Plaintiff's Motion for Summary Judgment with regard to his First Amendment Retaliation claim.

Dated:  October 15, 2018          **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2018, I electronically filed with the foregoing document and Exhibits with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500

26